**ACME METALS, INCORPORATED,**

v.

**J. D. WEDDINGTON.**

Court of Appeals of Tennessee,
Eastern Section.

March 14, 1978.

Certiorari Denied by Supreme Court
Aug. 7, 1978.

Joseph J. Levitt, Jr., Knoxville, for appellant.

W. Morris Kizer, of Frantz, McConnell & Seymour, Knoxville, for appellee.

## OPINION

SANDERS, Judge.

The Defendant has appealed from a judgment against him on a series of notes.

The Plaintiff-Appellee, Acme Metals, Inc., filed suit against the Defendant-Appellant, J. D. Weddington, on a series of five notes in the principal amount of $5,090.54 plus interest and attorney's fees.

The Defendant, for answer, says he signed the notes but only as President of Knoxville Casket Company, a Tennessee corporation. The notes represented indebtedness of the Knoxville Casket Company to the Plaintiff. It was never understood or agreed Defendant would be personally liable on the notes. He also asked the Court to reform the notes to make them reflect the Knoxville Casket Company, Inc., as the true and correct maker of the notes.

The case was tried before the Circuit Judge who found the issues in favor of the Plaintiff and awarded judgment in the amount of $6,502.16.

The Defendant has appealed and assigned the following errors:

1. "The Knox County Circuit Court erred in failing to hold that Weddington executed the notes sued on in this cause in his capacity as President of Knoxville Casket Co., and erred in giving personal judgment against him."

2. "The Knox County Circuit Court erred in failing to reform the notes as requested by the affirmative relief sought by appellant in the pleadings to reflect that the notes were corporate notes and not personal notes."

For a number of years prior to the execution of the notes the Plaintiff had been selling the Knoxville Casket Company metal sheeting for caskets. The material was sold on open account. The account had become delinquent and at the time the notes were executed the indebtedness was something in excess of $9,000. In the latter part of 1972 General Chemical Company, by whom the Defendant was employed, purchased 50% of the stock of Knoxville Casket Company. At the same time two individuals each purchased 25% of the stock. The Defendant owned no interest in the casket company and was not employed by it. However, he was made president of the company in December, 1972, but remained an employee of General Chemical Company. In January, 1973, the casket company owed the Plaintiff $9,083.46. The Plaintiff was demanding its money and threatening to sue unless satisfactory arrangements were made to pay the account. On January 17, 1973, the Defendant wrote Mr. Robinson of Acme Metals the following letter:

"This is in response to your request for a plan to settle the account balance due to Acme Metals by Knoxville Casket Co.

"As new owners of this firm, we have been working diligently at the task of bringing this operation around so that all of its accounts are current.

"If you will accept the enclosed check in the amount of $500.00 and the series of notes at $500.00 quarterly with 7½% interest in settlement of this balance, we can assure you that they will be paid promptly as they become due.

"I trust that this arrangement is acceptable to you and will appreciate your acknowledgement."

In response to this letter Mr. Robinson wrote the Defendant the following letter dated January 22, 1973:

"I am afraid we must insist that you repay our account much faster than you outlined in your letter of January 17, 1973. I am enclosing your $500.00 check and notes. We will accept payment on the following basis:

| | | | |
|---|---|---|---|
| $1,000.00 | 2/1/73 | $1,086.12 | 5/1/74 |
| 1,151.56 | 5/1/73 | 1,068.98 | 8/1/74 |
| 1,135.66 | 8/1/73 | 1,051.53 | 11/1/74 |
| 1,119.45 | 11/1/73 | 1,033.74 | 2/1/74 |
| 1,102.94 | 2/1/74 | 849.07 | 5/1/74 |

"The above schedule represents the repayment of $9,083.46 on a quarterly basis of $1,000.00 on the principle (sic) plus interest at the rate of 7½% per annum. I want to point out that we have waived the accrued interest up to the present time. The previous owners had agreed to pay us interest at the rate of 10% per annum and we will insist on this if we have to go to court, but we will be happy with the above payout if you will agree to it. Please send me your first payment and the notes and I will pass them along to Acme Metals.

"Let me know if you need any further information. Payments should be sent to:

"Acme Metals
P.O. Box 100
Loretto, Tenn. 38469"

In response to this letter the notes involved in this litigation were executed and sent to the Plaintiff. There appears on the face of each note the following pertinent provision: "90 days after date for value received Knoxville Casket Co. promises to pay to the order of Acme Metals" the face amount of the note. The signature of the Defendant appears on the face of each note without designating he is president or agent for Knoxville Casket Company.

The Plaintiff insists the Defendant is liable as a matter of law under T.C.A. § 47–3–403 since he signed his own name on the notes without showing he signed in a representative capacity. Plaintiff also insists Defendant agreed to give his personal note for the corporate indebtedness.

Defendant insists he never agreed to give his personal note for the corporate indebtedness and he should not be held liable under T.C.A. § 47–3–403.

As pertinent here, T.C.A. § 47–3–403 provides as follows:

"47–3–403. *Signature by authorized representative.*—(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

"(2) An authorized representative who signs his own name to an instrument

\* \* \* \* \* \*

"(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity."

Comment 3 under the above Code section makes it clear that since the note provides "Knoxville Casket Co. promises to pay" there would be no liability on the Defendant had his signature on the note been followed by the word "agent", there being no question as to his authority to sign on behalf of the casket company. We think it is also clear that parol evidence is admissible as between the parties to establish whether or not the Defendant did, in fact, sign the notes as agent of the casket company. The Defendant insists he did; the Plaintiff insists he did not. Also see 11 Am.Jur.2d, Bills and Notes § 558, page 629.

Aside from the testimony of Mr. Robinson, who testified on behalf of the Plaintiff, we think all the evidence supports the contention of the Defendant. Mr. Robinson testified as follows:

"Q OK, when did you become aware that Mr. Weddington was involved with the casket company?

"A Well, it must be when I talked to him on the telephone. I guess that's the first contact I had with Mr. Weddington.

"Q What position did Mr. Weddington have with Knoxville Casket Company?

"A President, he was President of Knoxville Casket Company.

"Q Did you discuss this account with him at that particular time?

"A I certainly did.

"Q At that time how far was the account behind?

"A About $9,000.00, I think.

"Q What did you want him to do about this particular account?

"A I wanted him to, well, I wanted him to pay up obviously, failing that then I wanted some personal notes.

"Q From whom?

"A From him.

"Q Did you tell him that?

"A Yes, I certainly did.

"Q Did he tell you that he did not—

"MR. LEVITT: Object, Your Honor, he is leading this witness.

"THE COURT: Don't lead, Mr. Kizer, don't lead the witness.

"Q Did Mr. Weddington ever tell you that he did not intend to sign a personal note?

"A No."

It will be noted Mr. Robinson testified the Defendant never told him "that he did not intend to sign a personal note". At no time did Mr. Robinson testify that Defendant told him he would or intended to sign a personal note. The Defendant, however, testified he never did agree to sign a personal note. In his brief the Defendant outlines a numerical list of facts and circumstances upon which he relies as supporting his contention and negating the contention of the Plaintiff. They are, in part, as follows:

"1) The account for which the notes were given began in 1969 and the last charge to the account was on June 23; 1971;

2) Weddington did not join Knoxville Casket until December, 1972;

3) Acme knew Weddington was president of Knoxville Casket Co. before the notes were signed;

4) Acme knew nothing about Weddington's personal financial standing;

5) The notes show on the face they were to be paid by Knoxville Casket Co.;

6) Acme knew a State representative was one of the owners of Knoxville Casket Co., but admitted never asking for a personal endorsement from any owner;

7) Weddington denied he was ever asked to personally stand for the debt of Knoxville Casket Co.;

8) Tom Jensen who made the arrangements for the notes with Acme said that there was never any discussion in his presence or in which he was involved concerning anyone with Knoxville Casket personally guaranteeing any debt to Acme;

9) The $500.00 notes first tendered to Acme and rejected because they would not pay the account fast enough were corporate notes;

10) Everyone concerned treated the notes as the obligation of Knoxville Casket Co. up until the suit was filed:

a) None of the written correspondence between any parties to the notes ever mentioned a personal obligation,

b) Correspondence between officials of Acme after the notes were received by Acme only referred to them as 'Knoxville Casket Company' notes, and related that 'Knoxville Casket' was told where to mail the payment checks,

c) Knoxville Casket made all the payments that were made on the notes,

d) Acme never set up a J. D. Weddington account on its books after receiving the notes, but set up a new ledger page in the name of Knoxville Casket Co. and posted payments to that account."

A careful review of the record reveals there is evidence to support each of the contentions of the Defendant. The undisputed proof is that the notes which were sent to the Plaintiff in the above-quoted letter of January 17, 1973, were the notes of Knoxville Casket Company. The conversations between Mr. Robinson and the Defendant all transpired prior to that time. However, in Mr. Robinson's letter of January 22 in which he returned the notes no objection was made to their not being the notes of the Defendant instead of the company. The only reason given for returning the notes was "I am afraid we must insist that you repay your account much faster than outlined in your letter of January 17, 1973". Also of interest is a transmittal letter by Mr. Robinson to the Plaintiff after he had received the notes here in dispute, in which he said:

"Here are the Knoxville Casket Company notes and the check for $1,000.00. Please note that the notes come due 90 days after the date on the note. The first note will be due May 1st, 1973.

"I have told Knoxville Casket to mail the checks direct to you. Let me know if they are late."

We hold the evidence preponderates in favor of the Defendant and he has overcome the rebuttable presumption of liability under the above-quoted portions of T.C.A. § 47-3-403. The Defendant's first assignment of error is sustained.

In view of our holding on this assignment, assignment No. 2 is pretermitted.

The judgment of the Trial Court is reversed and the case is dismissed.

The costs of this appeal, together with the costs of the Trial Court, are taxed to the Appellee.

GODDARD, J., concurring.
PARROTT, P. J., dissenting.