**GANT OIL COMPANY, INC.,**
**Plaintiff/Appellant,**

**v.**

**ACE OIL COMPANY, A DIVISION OF ACE ENTERPRISES, INC., and Shirley Crabtree, Defendants/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 25, 1994.

Permission to appeal Denied by Supreme Court Aug. 29, 1994.

B.G. Marks, McMinnville, for plaintiff/appellant.

J. Christopher Hall, Weems & Associates, Chattanooga, for defendants/appellee.

## OPINION

CANTRELL, Judge.

The court below found that defendant Shirley Crabtree, the secretary-treasurer of the defendant corporation, could not be held personally liable on two corporate checks that she signed, even though her signature on the checks did not specifically indicate that she was signing in her representative capacity. We agree with the trial court that there was no expectation by the parties that Mrs. Crabtree was personally assuming liability on the checks when she signed them. We, therefore, affirm.

### I.

Plaintiff/appellant Gant Oil Company is a family-owned corporation that primarily deals in petroleum products. Its principal offices are located in Warren County, Tennessee. Katherine Gant is the president of Gant Oil Company. Her son, Harrison Gant is the vice-president. Defendant/appellee Ace Oil Company also deals in petroleum products. Its principal offices are located in Chattanooga, Tennessee. The two companies have done business since the 1970s, and have both bought from and sold to each other. Mike Crabtree is the president of Ace Oil. His mother, appellee Shirley Crabtree, is the secretary-treasurer.

In the transactions that led to the present appeal, Gant Oil Company consigned diesel fuel to a non-party facility in Chattanooga for resale to retail dealers. Ace Oil Company purchased some of this fuel in a series of transactions. After receiving copies of the

bills of lading, Gant sent invoices to Ace for payment.

Mrs. Crabtree sent Gant Oil a check for $15,986.05 drawn on Ace's account. A few days later, she sent Gant an identical check except in the amount of $9,414.01. When these checks were presented to the drawee bank, they were dishonored for lack of sufficient funds.

The account information printed in the upper left hand corner of the dishonored checks contained the words "ACE OIL COMPANY" in large capitals, and beneath it, in smaller capitals, "A DIVISION OF ACE ENTERPRISES, INC." Shirley Crabtree's signature on the instrument was not preceded or followed by any notation to indicate her corporate title or her agency.

The account was later closed. Plaintiff brought suit against Ace Oil for failure to pay for its purchases, and against Shirley Crabtree personally, because she had signed her individual name to the checks without indicating that she was acting in a representative capacity. Judgment was not pursued against Ace Oil Company, as its parent company, Ace Enterprises Inc. was forced into involuntary bankruptcy.

After a trial on the merits of the claim against Shirley Crabtree, the trial court found that there had been no expectation by any party that Mrs. Crabtree would be held personally liable for the amount of the checks, and the plaintiff's claim was dismissed with prejudice. This appeal followed.

## II.

Tennessee's law on Commercial Paper is found in the Tennessee Code Annotated, § 47-3-101 et seq. The statute that deals with the liability arising from the signature of an authorized representative is Tenn Code Ann. § 47-3-403(2), and is printed below.

An authorized representative who signs his own name to an instrument:

(a) is personally obligated if the instrument neither names the person represent-

ed nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

Though appellant argues otherwise, section (a) clearly does not apply in this case. The checks in question are printed with the name "Ace Enterprises Inc." in the place where the owner of an account is usually designated. Thus, the person represented is named.

Appellant's remaining argument is that if we hold that the instrument names Ace Enterprises Inc. as the person represented (which we do) then he is still entitled to prevail because Mrs. Crabtree's signature does not show that she signed in a representative capacity. We respectfully disagree with this conclusion.

▮ First, we must note that section (b) refers to *the instrument* as showing the capacity in which the representative signed, rather than to the form of the signature as the sole source of that information. Thus in determining liability, we must look to the instrument as a whole.

In this case, the relevant instruments are corporate checks. Though the Tennessee courts have apparently not ruled on this question, courts in other states have generally recognized that the signature of a corporate officer on a check drawn on a corporate account indicates that the obligation on the check will be borne by the corporation, rather than by the officer in his individual capacity. *See Pollin v. Mindy Mfg. Co.*[1], 211 Pa.Super. 87, 236 A.2d 542 (1967), *St. Croix Engineering Corp. v. McLay*, 304 N.W.2d 912 (Minn.1981). We believe that this must be at least a permissible inference where an examination of the instrument as a whole

---

1. The so-called "business expectations test" established in *Pollin*, and endorsed by White and Summers in *Uniform Commercial Code*, 3rd Ed., Vol. 1 § 13-4 (1989), recognizes what, in almost all cases, is the reality of a transaction involving a corporate check: that the signature on the instrument is placed thereon for the purpose of paying a corporate obligation.

shows the check was signed in a representative capacity.

Also, the phrase "except as otherwise established between the immediate parties ..." found at the beginning of Tenn Code Ann. § 47–3–403(2)(b), indicates that the law contemplates a different treatment of a dispute between the immediate parties on a note or draft than of one between the maker or drawer and a subsequent holder.

■ Specifically, if the signature on the note or draft creates an ambiguity, then between the immediate parties, parol evidence is admissible to establish the expectations of the parties in regard to the signer's agency. Such evidence is not admissible between the maker or drawer and a subsequent holder. *See FDIC v. Tennessee Wildcat Services Inc.*, 839 F.2d 251 (6th Cir.1988); *Acme Metals Inc., v. Weddington,* 575 S.W.2d 15 (Tenn.Ct.App.1978).

### III.

■ In the case before us, Harrison Gant asserts that he was not aware that he was dealing with a corporation, but believed that Ace Oil Company was simply a family business, and that the Crabtree family, with whom he had dealt for many years, would continue to honor their obligations to him.

Mr. Gant points to some of the exhibits in this case in support of this assertion: Invoices sent to Gant Oil Company and Bills of Lading which bear the name "Ace Oil Company" rather than "Ace Enterprises Inc.," and which therefore do not disclose Ace's incorporated status. He also testified that when he visited Ace's offices, the sign on the building identified its occupant as Ace Oil Company, not Ace Enterprises Inc.

We must note here that other exhibits in the case, namely invoices that Gant Oil Company sent out, similarly do not disclose the incorporated status of the company owned and operated by members of the Gant family. More to the point, however, there is no proof that the Crabtrees were attempting to conceal the fact of Ace's incorporation, or that Mr. Gant shaped his behavior towards Ace Oil in reliance upon a belief that Ace was not an incorporated entity. No claim for fraud or misrepresentation has been asserted in this case.

Mr. Gant also testified that he never saw any checks bearing the name "Ace Enterprises, Inc." until they were dishonored. But if an employee of Gant Oil Company deposited those checks, knowledge of the existence of the incorporated entity must be imputed to Gant Oil Company, which is the actual party appellant in this case. Mr. Gant's actual knowledge, or lack of it, is not relevant in determining the question of notice to the appellant corporation.

Finally and perhaps most conclusive on the question of the expectations of the parties, Mr. Gant admitted on cross-examination that he never expected Mrs. Crabtree to be personally liable on the check.

Q. Was there ever an understanding between yourself and Mrs. Crabtree that she would be personally liable on these checks?

A. No.

Q. Was there ever an understanding where you would bill Mrs. Crabtree instead of Ace Oil Company?

A. No.

### IV.

The judgment of the trial court is consistent with the law of commercial paper and is amply supported by the evidence. It is therefore affirmed. Remand this cause to the trial court for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.